IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**CALVIN J. STOVER**                                                                                          **PLAINTIFF**

V.                                          CASE NO.: 5:14-CV-05079

**OFFICER MATTHEW HASKINS, Springdale
Police Department; OFFICER KEVIN PROCTOR,
Springdale Police Department; OFFICER CHAD
NICCUM, Springdale Police Department;
DETECTIVE DUANE MEADOWS, 19th Judicial
Drug Task Force; KATHY O'KELLY, Chief of Police,
Springdale Police Department; JOHN and JANE DOE
OFFICERS, Springdale Police Department;
BENJAMIN POOLE, Deputy Prosecuting Attorney;
VAN STONE, Prosecuting Attorney; JOHN and JANE
DOE, employees of the Benton County Prosecutor's Office;
SARAH ASHLEY, Public Defender; SCOTT McELVEEN,
Public Defender; JAY SAXTON, Chief Public Defender;
JOHN and JANE DOE, employees of the Public Defender's
Office; ROBIN GREEN, Circuit Court Judge; SHERIFF
KELLY CRADDUCK, Benton County; and JOHN and
JANE DOES, employees of the Benton County Sheriff's Office**                    **DEFENDANTS**

<u>**ORDER**</u>

On November 25, 2014, the Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas, submitted a Report and Recommendation ("R & R") (Doc. 12) following preservice screening of Plaintiff Clavin J. Stover's Complaint, as contemplated by the Prison Litigation Reform Act, 28 U.S.C. § 1915A(a). Stover asserts claims for violations of his constitutional rights under 42 U.S.C. § 1983 against a number of governmental actors, including various members of the Springdale Police Department, who arrested him; the State prosecuting attorneys, who brought charges against him; the public defenders, who represented him; and the State court judge, who heard his criminal

1

case.

The Magistrate Judge recommended dismissing all claims either due to frivolousness, immunity issues, or for failure to state claims for which relief may be granted. Stover filed objections to the R & R on December 15, 2014 (Doc. 12) and again on December 17, 2014 (Doc. 14). He also filed an affidavit on July 23, 2015 (Doc. 17) and a Motion to Supplement Statement of Claim (Doc. 18) on August 6, 2015.

After reviewing the entire record of the case *de novo*, the Court finds that Stover's objections and other filings offer neither law nor fact requiring deviation from the Magistrate's well-reasoned R & R, and therefore, as explained below, the R & R will be **ADOPTED IN ITS ENTIRETY**.

## I.  OBJECTIONS

### A.  Springdale Police Officers

With respect to Stover's objection that he made valid claims concerning Officer Haskins and other police officers allegedly "committ[ing] perjury during pretrial proceedings" (Doc. 13, pp. 3-4), the Magistrate Judge correctly found that police officers are entitled to absolute immunity for testifying in criminal matters. The Supreme Court has explained that "[s]ubjecting government officials, such as police officers, to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties." *Briscoe v. LaHue*, 460 U.S. 325, 343 (1983). Furthermore, a likely scenario in a § 1983 case could involve a defendant—such as Stover—who would "transform resentment at being convicted into allegations of perjury by the state's official witnesses." *Id.* For all of these

legitimate public policy reasons, the police officers who testified in Stover's criminal proceedings are entitled to immunity, and Stover's objections in this regard are overruled.

With respect to Stover's remaining claims against certain other Springdale police officers who conducted what Stover characterizes as an unlawful search of his premises and vehicle—which, in turn, led to his arrest and criminal prosecution—such collateral attacks on his conviction are *Heck*-barred, as the Magistrate Judge properly concluded, and can only be taken up by a district court following direct appeal or through a federal habeas proceeding. *Heck v. Humphrey*, 512 U.S. 477 (1994). Accordingly, Stover's allegations as to police misconduct in searching and seizing evidence from a residence and vehicle, as detailed in Stover's objections at Doc. 13, p. 5; Doc. 14, pp. 1-2; and Doc. 17, pp. 1-2, must be dismissed.

### B. Prosecutors and Public Defenders

Stover contends that the State prosecutors and public defenders involved in his criminal prosecution conspired to delay the trial of his case and force him to undergo multiple, unnecessary mental evaluations against his will. He further alleges that prosecutors pursued charges against him in bad faith, since, according to Stover, the evidence collected by police to support the charges against him was the fruit of an illegal search. Finally, Stover points to racial animus driving the legal proceedings brought against him, as, in his view, the fact that the prosecutors "continue[d] to pursue the false charges gave the look of selecting based on race," and "Benton County Circuit Court . . . has a history of racial disparity." (Doc. 13, p. 4).

With respect to Stover's objections regarding his own attorneys, Stover fails to cite

to any relevant law to rebut the Magistrate Judge's legal conclusion that public defenders are not subject to § 1983 liability, as they do not perform counseling and advocacy functions under color of State law. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 318 (1981). Similarly, Stover's complaints regarding the State prosecutors fail to address the Magistrate Judge's conclusions as to prosecutorial immunity. All allegations made against the prosecutors have to do with how they "initiat[ed] a prosecution and present[ed] the State's case," *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); therefore, these acts are shielded from § 1983 liability through the doctrine of absolute immunity. A qualified immunity analysis would apply to prosecutors' investigatory or administrative acts, *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), but none of the complaints Stover makes about the prosecutors have to do with their early-stage investigatory tactics or decisions concerning administrative matters; instead, all allegations concern prosecutorial decision-making that was wholly discretionary in nature. Deciding whether to pursue charges against Stover on behalf of the State, and how such charges are brought, including legal strategies concerning the timing and presentation of evidence at trial, are all acts deserving of absolute prosecutorial immunity. Claims against these prosecutors, as well as the State public defenders, are dismissed.

### C. Judicial Immunity of Judge Green

Stover also objects that Judge Green, the State court judge who presided over Stover's felony case, should not be considered immune from suit because she "conspired with the prosecutor to determine offenses to be tried" and "abandoned her judicial role . . . to conspire and schedule a second mental evaluation [for Stover] when [he] had already

been found competent to stand trial." (Doc. 13, pp. 1-2); *see also* Doc. 14, p. 3. These allegations are identical to those asserted by Stover in his original Complaint and, as the Magistrate Judge correctly observed in the R & R, must be dismissed because a judge is immune from suit for any § 1983 claim arising from an inmate's prosecution—unless the judge's challenged actions are nonjudicial in nature or were taken in the absence of all jurisdiction. *Liles v. Reagan*, 804 F.2d 493, 495 (8th Cir. 1986) (citing *Stump v. Sparkman*, 435 U.S. 349, 355-57 (1978)).

The Eighth Circuit has explained that judicial immunity applies if the act complained of is "normally performed by a judge" or if "the judge was interacting with the complaining party in a judicial capacity." *Liles*, 804 F.2d at 495. Here, all offending acts allegedly committed by Judge Green, as described in detail in Stover's Complaint, were done in her capacity as the presiding judge in Stover's criminal case. With respect to the particular complaints about Judge Green lodged by Stover in his objections, it is clear that these acts are covered by the blanket of judicial immunity, as Judge Green possessed the authority to manage her trial docket as she saw fit, hold hearings, order Stover to undergo one or more mental evaluations, and continue the trial date until such evaluations were complete. *See Avery v. State*, 93 Ark. App. 112 (Ark. Ct. App. 2005) ("Whether a second mental evaluation is necessary is within the trial court's discretion to determine."). All claims against Judge Green are properly dismissed.

## II. MOTION TO SUPPLEMENT STATEMENT OF CLAIM

On August 6, 2015, Stover filed a Motion to "add to the charging allegations against Prosecuting Attorney Van Stone" causes of action for defamation and "slanderous false

5

statements" arising from a letter Stone wrote to an employee of the Arkansas Department of Corrections ("ADC"), in response to that employee's request for approval of Stover's participation in a work-release program. Stone did not approve of Stover's participation in the program and recommended against allowing Stover a furlough at any time. Stone also described in the letter Stover's criminal history and some details surrounding his most recent conviction.

The Court finds that Stover's Motion to Supplement Claim (Doc. 18), which could be construed as a Motion to Amend the Complaint, is **DENIED**, as it fails to state an actionable claim against the prosecuting attorney for the violation of a constitutional right pursuant to § 1983. Arguably, Stone's written response to the ADC concerning Stover's suitability for a work-release program could constitute an administrative, rather than a prosecutorial, act, and as such could be entitled to qualified, rather than absolute, immunity. However, in order for Stover to state a claim against Stone pursuant to § 1983, Stover must allege that Stone deprived him of some constitutional right while acting under color of State law. There are two reasons why Stover cannot state such a claim.

First, Arkansas statutes do not create a protected liberty interest in participation in a work-release program—which is the subject of the ADC's letter of inquiry to Stone.[1]  *See Mahfouz v. Lockhart*, 926 F.2d 791, 793 (8th Cir. 1987) (holding that there is no protected liberty interest in participating in permissive work-release programs). Second, a

---

[1] The particular program for which Stover was being considered is operated by the ADC and is commonly known as "Act 309," now codified at Ark. Code Ann. § 12-30-401 Through this work-release program, certain State inmates are furloughed from the ADC and temporarily housed in municipal detention facilities so that they may work on government property and projects under the supervision of the county sheriff.

defamation claim lodged against a public official, like the one asserted by Stover in his Motion, does not implicate the deprivation of a liberty interest within the meaning of the Due Process Clause of the Constitution.  *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (finding that injury to reputation is neither a liberty nor property interest guaranteed against State deprivation without due process).

For all of these reasons, Stover's Motion to Supplement (Doc. 18) is **DENIED**.

### III. CONCLUSION

Stover's objections, having been considered by the Court, are overruled, and his Motion to Supplement (Doc. 18) is **DENIED**.  Accordingly, the Magistrate Judge's R & R (Doc. 12) is **ADOPTED IN ITS ENTIRETY**, and the case is **DISMISSED WITHOUT PREJUDICE** due to frivolousness, immunity issues, or for failure to state claims upon which relief may be granted.  The dismissal of this case will constitute a strike under 28 U.S.C. § 1915(g).  The Clerk is directed to place a strike flag on the case.

**IT IS SO ORDERED** on this 17th day of September, 2015.

      /s/ Timothy L. Brooks
    TIMOTHY L. BROOKS
    UNITED STATES DISTRICT JUDGE